US ATTORNEY'S OFFICE-RI
31 JUL 2020 PM 1:12

UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

UNITED STATES OF AMERICA

v.

ABRAR ANJUM

Criminal Case No _____    1:20CR67-JJM-LDA

## PLEA AGREEMENT

Pursuant to Rule 11(c)(1)(A) and (B) of the Federal Rules of Criminal Procedure, the United States and Defendant Abrar Anjum ("Defendant" or "Anjum") have reached the following agreement:

1.    Defendant's Obligations.

a.    Defendant will waive presentation of this matter to a grand jury and consent to the filing of a one-count Information that charges defendant with conspiracy to commit wire fraud, in violation of 18 U.S.C. § 1349.   Defendant agrees that Defendant will plead guilty to said Information.   Defendant further agrees that the time between the filing of this plea agreement and the scheduled date for the change of plea is excludable under the Speedy Trial Act, 18 U.S.C. § 3161.

b.    Defendant will promptly submit a completed Department of Justice Financial Statement to the U.S. Attorney's Office, in a form that the U.S. Attorney's Office provides and as it directs.   Defendant agrees that his financial statement and disclosures will be complete, accurate, and truthful.   Defendant expressly authorizes the U.S. Attorney's Office to obtain a credit report on him in order to evaluate Defendant's ability to satisfy any financial obligation that may be imposed by the Court.

2.    Government's Obligations.

In exchange for Defendant's plea of guilty:

a.    The government will recommend that the Court impose a term of imprisonment within the range of sentences for the offense level determined by the Court under the United States Sentencing Guidelines (the U.S.S.G. or "guidelines") or the

mandatory minimum term of imprisonment pursuant to statute, but not including probation or a "split-sentence," even if permitted under the guidelines.

b.      For purposes of determining the offense level, the government agrees to recommend a two-level reduction in the offense level for acceptance of responsibility under § 3E1.1(a) of the guidelines if Defendant continues to demonstrate acceptance of responsibility through sentencing.

c.      As of the date of this agreement, Defendant has timely notified authorities of an Intention to enter a plea of guilty.   If the offense level is 16 or greater and Defendant enters a plea of guilty pursuant to this agreement, the government will move the sentencing Court for an additional decrease of one level, pursuant to U.S.S.G. § 3E1.1(b), unless Defendant indicates an intention not to enter a plea of guilty, thereby requiring the government to prepare for trial.

d.      The government is free to recommend any combination of supervised release, fines, and restitution which it deems appropriate.

e.      If the government, in its sole discretion, determines that Defendant has provided substantial assistance to the government in the investigation or prosecution of another person, the government will file a motion under § 5K1.1 of the guidelines asking the Court to impose a sentence below the guideline sentencing range.   Defendant understands that the decision whether to file such a motion is solely up to the United States Attorney's Office and the decision whether, and to what extent, to grant it is solely up to the Court.   The government has not made any promise or representation about what sentence it will recommend if it files such a motion or what sentence the Court will impose.

3.      Defendant understands that the guidelines are not binding on the Court, and that, although the Court must consult the guidelines in fashioning any sentence in

this case, the guidelines are only advisory, and the Court may impose any reasonable sentence in this matter up to the statutory maximum penalties after taking into account the factors enumerated in 18 U.S.C. § 3553(a).

4.    The United States and defendant stipulate and agree to the following facts under the guidelines:

a.    Beginning at some point in 2019 that was no later than October 29, 2019, Defendant and his coconspirators agreed to obtain money from victims by misleading them into believe that their computers had been infected by malware or viruses and then collecting payment from them for putative computer protection services.

b.    Defendant joined in this agreement with at least two others, PS and PM, for the purpose of enriching himself and his coconspirators.

c.    The scheme that they agreed to and did perpetuate included (i) mis-representing to victims that malware had been detected on their computers; (ii) obtaining payment from victims for putative services that would supposedly aid in removing and managing malware; (iii) obtaining from the victims' computers information sufficient to gain access to the victims' bank accounts; (iv) using that information to withdraw funds, without authorization, from the victims' bank accounts; and (v) routing the victim-money to Defendant and his coconspirators.   This scheme is known as "Tech Fraud."

d.    Defendant allowed his coconspirators to have victim-money directed to his bank accounts.   Upon receipt of the money in his account, he kept a portion of the money and sent to remainder to his coconspirators.   The amount he kept was generally less than fifty percent of the money received into the account.

e.    Defendant knew that the victim-money directed to his bank accounts was money that had been obtained from victims through misrepresentation, specifically the false assertion that malware had been detected on the victims' computers.

3

f.    Defendant also knew that by having the victim money directed to his bank accounts and then having some of the money routed to his coconspirators he aided in making it difficult to trace the movement of the victims' money and the identities of those who received the victims' money.

g.    On or about October 29, 2019, through a pop-up advertisement transmitted to her computer via the internet, PH was told that malware or a virus had been detected on her computer and advised to call a particular telephone number, which was presented as the number for Microsoft Corporation.   In fact, the number did not belong to Microsoft Corporation.

h.    On calling that number, PH was routed to an operator at a call center in India.   The operator introduced himself as "Wilson" and had PH give him remote access to her computer.   Wilson, through the remote access, examined a file on PH's computer that contained the name of PH's bank and her online banking user name and password, information sufficient to access PH's bank account electronically.

i.    On or about October 29, 2019, a check for $15,000 was received by AB's bank for deposit into AB's bank account, a bank account that he had set up at the direction of Defendant's coconspirators.

j.    Shortly after the arrival of the check, Defendant contacted AB to inquire about the check and AB's transmission of the check-funds to Defendant's account at Wells Fargo Bank.   In mid-November, Defendant again contacted AB and demanded that he transfer the $15,000 to Defendant's account at Wells Fargo Bank.

k.    Defendant intended to keep a portion of the $15,000 and transmit the remainder to his coconspirators.

l.    Employing Tech Fraud, Defendant and his coconspirators obtained and deposited in Defendant's accounts victim-money – aside from money associated with PH – as follows:   $20,495 in Defendant's account with Santander Bank, $4,134 in

Defendant's account with Bank of America, and $1,998 in Defendant's account with Wells Fargo.

m.      The parties agree that under Guidelines § 2B1.1(b)(1), the actual loss from Defendant's participation in and execution of Tech Fraud in 2019 was $26,627.

n.      The Government contends, and Defendant does not admit, that the intended loss amount was approximately $41,627.

o.      The parties agree that no decrease of offense level is appropriate under Guideline § 2X1.1.

p.      The parties agree that a substantial part of the fraudulent scheme was committed from outside the United States and that therefore the enhancement under Guideline § 2B1.1(b)(10) applies and requires a 2-level enhancement and a resulting offense level of no less than 12.

5.      Except as expressly provided in the preceding paragraph, there is no agreement as to which Offense Level and Criminal History Category applies in this case. Both the United States and Defendant reserve their rights to argue and present evidence on all matters affecting the guidelines calculation.

6.      The maximum statutory penalties for the offense to which Defendant is pleading are 20 years imprisonment, a fine of $ 250,000, a term of supervised release of 3 years; a mandatory special assessment of $100;

7.      Defendant agrees that, after Defendant and Defendant's counsel sign this plea agreement, counsel will return it to the United States Attorney's Office along with a money order or certified check, payable to the Clerk, United States District Court, in payment of the special assessments.   Failure to do so, unless the Court has made a previous finding of indigence, will relieve the government of its obligation to recommend a reduction in the offense level under the guidelines for acceptance of responsibility.

8.    Defendant is advised and understands that:

a.    The government has the right, in a prosecution for perjury or making a false statement, to use against Defendant any statement that Defendant gives under oath;

b.    Defendant has the right to plead not guilty, or having already so pleaded, to persist in that plea;

c.    Defendant has the right to a jury trial;

d.    Defendant has the right to be represented by counsel – and if necessary have the Court appoint counsel – at trial and every other stage of the proceeding;

e.    Defendant has the right at trial to confront and cross-examine adverse witnesses, to be protected from self-incrimination, to testify and present evidence, and to compel the attendance of witnesses; and

f.    Defendant waives these trial rights if the Court accepts a plea of guilty.

g.    Defendant recognizes that pleading guilty may have consequences with respect to his immigration status if he is not a citizen of the United States.   Under federal law, a broad range of crimes are removable or deportable offenses.   Likewise, if defendant is a naturalized citizen of the United States, pleading guilty may result in denaturalization as well as removal and deportation. Removal, deportation, denaturalization, and other immigration consequences are the subject of separate proceedings, however, and defendant understands that no one, including his attorney or the district court, can predict to a certainty the effect of his conviction on his immigration status.   Defendant nevertheless affirms that he wants to plead guilty regardless of any immigration consequences that his plea may entail, even if the consequence is his removal or deportation from the United States or his denaturalization.

6

10.     Except for paragraphs 2 and 4 above, the parties have made no agreement concerning the application of the guidelines in this case.

11.     Defendant understands that the Court alone makes all sentencing decisions, including the application of the guidelines and the sentence to be imposed.   The Court is not bound by the parties' stipulations of fact, offense level adjustments, or the government's recommendations.   The Court is free to impose any sentence it deems appropriate up to and including the statutory maximum.   Defendant also understands that even if the Court's guideline determinations and sentence are different than Defendant expects, Defendant will not be allowed to withdraw Defendant's plea of guilty.

12.     Defendant hereby waives Defendant's right to appeal the conviction and sentence imposed by the Court, if the sentence imposed by the Court is within or below the Guidelines determined by the Court.   This agreement does not affect the rights or obligations of the United States as set forth in 18 U.S.C. § 3742(b), and the government retains its right to appeal any of the Court's sentencing determinations.

13.     This agreement is binding on the government only if Defendant pleads guilty, fulfills all Defendant's obligations under the agreement, does not engage in any conduct constituting obstruction of justice under § 3C1.1 of the guidelines, and does not commit any new offenses.   Defendant understands that if Defendant violates this agreement in any way, the government shall be released from its obligations under the agreement and will be free to make any recommendations that it deems appropriate.   If that occurs, Defendant shall not have the right to withdraw Defendant's guilty plea.

14.     This agreement is limited to the District of Rhode Island and does not bind any other federal, state, or local prosecutive authorities.

15.     This agreement constitutes the entire agreement between the parties.   No other promises or inducements have been made concerning the plea in this case.

Defendant acknowledges that no person has, directly or indirectly, threatened or coerced Defendant to enter this agreement.   Any additions, deletions, or modifications to this agreement must be made in writing and signed by all the parties in order to be effective.

16.    Counsel for Defendant states that Counsel has read this agreement, been given a copy of it for Counsel's file, explained it to Defendant, and states that to the best of Counsel's  knowledge and belief, Defendant understands the agreement.

17.    Defendant states that Defendant has read the agreement or has had it read to Defendant, has discussed it with Defendant's Counsel, understands it, and agrees to its provisions.

| | | | |
|---|---|---|---|
| _____ | 6-25-20 | _____ | 6/25/2020 |
| Abrar Anjum | Date | Noah J Kilroy, Esq. | Date |
| Defendant | | Counsel Defendant | |

| | | | |
|---|---|---|---|
| _____ | 8/14/2020 | _____ | 8/13/2020 |
| Milind Shah | Date | Sandra R. Hebert | Date |
| Assistant U.S. Attorneys | | Assistant U.S. Attorney | |
| | | Criminal Division ~~Deputy~~ Chief | |

8